**HELLENIC LINES, LTD., Plaintiff,**

v.

Walter O'HEARN, William Montella, Nicholas Seregos, John W. McGrath, Inc., McGrath Services Corp., Export Carpenters, Inc. (FMLY: Quin Marine Service, Inc.) and Jackson Engineering Co., Inc., Defendants.

No. 80 Civ. 7197 (KTD).

United States District Court, S. D. New York.

Sept. 21, 1981.

Zock, Petrie, Reid & Curtin, New York City, for plaintiff; Philip J. Curtin, Nicholas P. Guiliano, New York City, of counsel.

Stillman, Friedman & Shaw, P. C., New York City, for defendant Walter O'Hearn; Edward M. Shaw, New York City, of counsel.

Obermaier, Morvillio & Abramowitz, P. C., New York City, for defendants Nicholas Seregos and Jackson Engineering Co., Inc.; Elkan Abramowitz, Mary McGowan Davis, New York City, of counsel.

McHugh, Leonard & O'Conor, New York City, for defendants John W. McGrath Corp., McGrath Services Corp. and Export Carpenters, Inc.; Martin J. McHugh, James M. Kenny, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This is a civil action for damages brought by a private party under the Racketeer Influenced and Corrupt Organization Act ["RICO"], 18 U.S.C. §§ 1961–1968 (1970) alleging that the defendants engaged in a scheme of kickbacks, bribes and fraudulent billings which resulted in a financial loss to the plaintiff. Various defendants now move to dismiss the complaint on three grounds: first, the complaint fails to state a claim upon which relief can be granted; second, the court lacks subject matter jurisdiction and third, the complaint fails to plead fraud with sufficient particularity.

### I. *The Complaint*

Plaintiff Hellenic Lines, Ltd. ["Hellenic"] is a Greek shipping corporation which maintains an office in New York City. Hellenic owns and operates several ocean going vessels which carry general cargo all over the world. Hellenic also provides some of its own stevedoring services and operates a terminal at a Brooklyn pier. Defendant John W. McGrath Corp. ["McGrath Stevedoring"], a New York corporation, also performs various stevedoring and terminal op-

erations on the New York waterfront. McGrath Stevedoring has two subsidiaries who are also defendants to this action: Export Carpenters, Inc. ["Export"] (formerly Quin Marine Service, Inc.) which provides carpentry and lashing services to ocean going vessels, and McGrath Services Corp. ["McGrath Services"] which is a Delaware corporation performing "waterfront related work." The defendant Jackson Engineering Co., Inc. ["Jackson Engineering"], a corporation operating out of Staten Island, New York, engages in the business of repairing the hulls, piping, valves and pumps of ocean going vessels. All of the above named parties to this action, including Hellenic, employ men who are members of the International Longshoremen's Association ["ILA"].

During the period from about 1975 to 1979, Hellenic employed the services of Export, McGrath Services and McGrath Stevedoring. The complaint alleges that William Montella, an employee of Export, conspired with officials of the ILA to take bribes from Hellenic employees and to present false invoices for services in excess of those actually performed for Hellenic in violation of 18 U.S.C. § 1962(d). It is asserted that the objects of this conspiracy, which involve separate violations of 18 U.S.C. §§ 1962(b) and (c), were carried out with the approval of Walter O'Hearn, the president of McGrath Services and Quin Marine.[1] These illegal actions, according to Hellenic, resulted in the shipping company paying out $100,000 for services never rendered.

The complaint further invokes these same sections under RICO to allege that between 1973 and 1978 Nicholas Seregos, the president of Jackson Engineering, began to make cash kickbacks to various employees of Hellenic in order to induce them to cause Hellenic to place orders with Jackson Engineering for services and materials to be used on or in connection with Hellenic's vessels and other business activities. These kickbacks were for the purpose of inducing these Hellenic employees to accept on Hellenic's behalf padded bills for Jackson Engineering's services. It is further alleged that Seregos, acting for himself and for the defendant Jackson Engineering, conspired with officials of the ILA between 1975 and 1978 to use monies derived from the fraudulent billing of Hellenic to make illegal cash payments to union officials. Hellenic asserts that as a result of the illegal actions of the defendants Seregos and Jackson Engineering, Hellenic has suffered $800,000 in actual damages.

Based on the same set of facts, the plaintiff also has brought state law claims for wrongful conversion and for fraud.

Plaintiff seeks treble damages and attorneys' fees as provided in 18 U.S.C. § 1964(c). Plaintiff also seeks damages on the state law counts and punitive damages from all the defendants on the counts alleging common law fraud. All of the defendants move to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Defendants Walter O'Hearn, John W. McGrath Corp., McGrath Services and Export move to dismiss on the additional ground that the complaint fails to plead fraud with the requisite particularity under Fed.R.Civ.P. 9(b).

## II. *Discussion*

### A. *Failure To State A Claim and Subject Matter Jurisdiction*

Under RICO, Congress has deemed it "unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in ... interstate or foreign commerce." 18 U.S.C. § 1962(b). Also, it is unlawful for "any person employed by ... any enterprise ... to conduct or ... participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity ...." *Id.* Section 1962(c). Fur-

---

1. It was established in *United States v. Scotto*, 641 F.2d 47, 51 (2d Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981) that Montella and O'Hearn gave bribes to Anthony Scotto, president of the ILA.

ther, it is unlawful to conspire to violate any of these sections. *Id.* Section 1962(d). A party suffering an injury in his business or property from a violation of RICO may sue for treble damages and attorneys' fees. 18 U.S.C. § 1964(c).

■ Defendants assert here that the plaintiff fails to plead facts sufficient to describe a violation of Sections 1962(b), (c). Specifically, defendants submit that there has not been any "enterprise" allegedly operated by a "pattern of racketeering" and, that if one existed, Hellenic was a participant in—not an innocent victim of—the alleged RICO violation. In addition, defendants argue that Hellenic fails to specify how the alleged RICO violations injured its business or property within the meaning of Section 1964(c). Defendants also urge that Hellenic actually "benefited from its exclusive servicing arrangement with Jackson, whose prices apparently were so reasonable, despite the alleged markup, that Hellenic continued to be a satisfied customer throughout the five-year period the kickback scheme was purportedly in force." Defendants Seregos and Jackson Engineering's Memorandum in Support of Motion to Dismiss, pp. 7–8. In essence, defendants assert that Hellenic was not harmed by their employees taking bribes; but in fact, according to defendants, Hellenic received favorable service contracts as a result. Defendants further assert that the complaint must be dismissed because there is no allegation that the purported schemes were connected in some way with organized crime. Finally, it is argued that Hellenic lacks standing to sue because Hellenic is not an "innocent" person whom Congress intended to be protected by RICO and because Hellenic actually participated in the alleged fraudulent scheme. For the reasons that follow, none of these arguments are availing to have this complaint dismissed. There is no question here that the complaint adequately states a claim for relief under RICO. The complaint clearly alleges that these defendants, acting as an enterprise together with officials of the ILA, engaged in racketeering activity in violation of 18 U.S.C. §§ 1962(b), (c), (d).

At the outset, it should be noted that the claims against defendants Seregos and Jackson Engineering ["Jackson Defendants"] are less explicitly drawn than those against defendants O'Hearn, Montella, John W. McGrath Co., McGrath Services and Export ["McGrath Defendants"]. Paragraph 3.14 of the complaint apparently mistakenly refers to the McGrath Defendants rather than the Jackson Defendants as having violated 18 U.S.C. § 1962. Also, the complaint does not specifically state that the Jackson Defendants controlled or conducted an enterprise engaged in interstate commerce as it does for the McGrath defendants. Despite these failings in the complaint, it is apparent that the pleadings describe a violation of Section 1962 against the Jackson Defendants. Since the Jackson Defendants have clearly been aware of the nature of the charges against them, the plaintiff is hereby granted leave to amend the complaint to correct these minor defects.

■ The Jackson Defendants argue nevertheless that the complaint does not describe an "enterprise" conducted through a pattern of racketeering activity. For purposes of RICO, "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Under the clear language of the statute, at least three enterprises can be found to exist in this case. Jackson Engineering would easily qualify as an enterprise alone, as would Seregos individually. The third possibility is for Jackson Engineering and Seregos jointly to be the "enterprise." Whichever definition plaintiff intends to prove at this juncture, the ambiguity in the complaint does not prejudice the Jackson Defendants.

■ In addition, there is no requirement that either the Jackson or McGrath defendants be members of a group or society of criminals operating outside the law. RICO embraces enterprises conducted through a pattern of racketeering whether they are

facially legitimate or illegal. *Cf. United States v. Turkette*, ── U.S. ──, ──, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981) ("civil remedies could be useful in eradicating organized crime from the social fabric, whether the enterprise be ostensibly legitimate or admittedly criminal"). In any case, it appears that several of the named defendants in this action have already been either implicated in or convicted of previous bribery charges. *See United States v. Seregos*, 655 F.2d 33 (2d Cir. 1981); *United States v. Scotto*, 641 F.2d 47 (2d Cir. 1980), *cert. denied*, ── U.S. ──, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981).[2]

■ Defendants' contention that Hellenic has failed to allege any injury from the racketeering activity is likewise unfounded. Hellenic was clearly injured if, as alleged, it had to pay bills for services never performed. These payments allegedly went to officials of the ILA. The Jackson Defendants do not dispute that this constitutes a pattern of racketeering. Instead, they argue that Hellenic still paid a reasonable price for quality services and therefore were not hurt competitively by the RICO violation. This argument is specious. RICO permits a suit by anyone "injured in his business or property in violation of Section 1962 ...." 18 U.S.C. § 1964(c). There is no express requirement that there be some "competitive" injury nor does it appear that Congress intended there to be such a requirement. RICO does not countenance racketeering activity so long as it is done uniformly among competing concerns. Moreover, the broad remedial purposes of RICO clearly permits private law suits by a firm forced to pay bribes or kickbacks of any kind. Hellenic was directly injured if, as alleged, it paid for services it never received, the proceeds of which were used to pay off Hellenic employees and to bribe union officials. RICO was addressed to the precise form of racketeering activity which allegedly took place here. *See* 18 U.S.C. § 1961(1). Also, the fact that the predicate crime here may also be actionable under state fraud laws does not make RICO inapplicable. *See United States v. Turkette*, ── U.S. ──, ──, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981). In sum, although Hellenic may have benefited from this alleged scheme by insuring union peace and reliable service from Jackson Engineering, *see United States v. Clemente*, 640 F.2d 1069, 1077 (2d Cir. 1981), they were clearly injured if they had to pay padded bills and bribes.

■ Furthermore, it cannot be said from the pleadings presently before the court that Hellenic itself is guilty of engaging in racketeering activity. A corporation may be criminally liable for an employee's violation of law, if committed on the corporation's behalf and within the scope of the employees' authority. *See United States v. Demauro*, 581 F.2d 50 (2d Cir. 1978). Here, however, it is alleged that the individual defendants benefited personally from the racketeering activity while Hellenic did not. Also, the RICO claims here do not depend upon the taking of bribes by Hellenic employees. The complaint also alleges that the defendants, presumably unbeknownst to Hellenic, submitted fraudulent invoices for services never performed. Thus, it appears that at this stage of this case, it is impossible to determine the culpability of Hellenic.

B. *Failure to Plead Fraud With Particularity*

■ All of the defendants in this action argue that the complaint fails to plead fraud with the particularity required by Fed.R.Civ.P. 9(b). The complaint alleges three causes of action against all of the defendants: a claim under the civil provi-

---

2. The fact that some of the defendants have been found to have paid bribes in these other actions does not necessarily mean that plaintiff's obligation to plead a proper complaint or its burden of proof at trial is any less than in other civil actions. *See* Tarlow, RICO: The New Darling of the Prosecutor's Nursery, 49 *Fordham L.Rev.* 165, 175 n.45 (1980).

sions of RICO, a claim for conversion, and a claim for fraud. The latter two claims depend upon the first for a jurisdictional basis in federal court. The RICO claims against all of the defendants assert that they presented "false and fraudulent invoices for . . . services and materials which indicated the delivery to Hellenic of services and materials in excess of those actually performed and provided . . . ." Complaint ¶ 3.2; *see also id.* ¶ 3.11. As to the McGrath Defendants, it is alleged that these fraudulent invoices were presented between 1973 and 1978. These allegations of fraud which form the basis of the RICO claim fall short of Rule 9(b)'s requirement that in "all matters of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Plaintiff has not specified what invoices were fraudulent and in what amounts they were rendered fraudulent. *See Felton v. Walston,* 508 F.2d 577, 581 (2d Cir. 1974). Moreover, plaintiff refers to invoices over a five year period. Plaintiff simply must be more specific about when these allegedly fraudulent transactions took place. *See Fein v. Shearson-Hayden Stone, Inc.,* 461 F.Supp. 137, 142 (S.D.N.Y.1978). Additional discovery by plaintiff should not be necessary in order to rectify the vagueness inherent in these pleadings.

Accordingly, the complaint is dismissed for lack of specificity, and plaintiff is granted leave to replead within twenty days of the date hereof.

SO ORDERED.