14683

STATE v. BRANDON

(197 S. E., 113)

December, 1936.

*Messrs. R. B. Hildebrand* and *Dunlap, Dunlap & Roddey,* for appellant,

*Mr. W. G. Finley, Solicitor,* for the State, 

May 10, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The appellant, I. L. Brandon, was tried and convicted in the Court of General Sessions of York County on December 16, 1936, upon an indictment charging him with false swearing under oath. The indictment for false swearing was based upon testimony given by him in a case entitled *State v. Ed Brandon,* which was tried in the same Court on July 10, 1933.

The defendant appealed to this Court from the judgment beluow, and pending his appeal applied to the Court for leave to make a motion in the lower Court for a new trial, on the ground of after-discovered evidence.

The after-discovered evidence upon which the motion was founded consisted in the showing that upon the trial of the case of *State v. Ed Brandon,* when the appellant in this case was examined as a witness for the defense, the Deputy Clerk who administered the oath to him on which the prosecution for false swearing is grounded did not have authority under the laws of the State to administer it.

When the motion was heard by us (no issue of due diligence having been raised), this Court concluded that a *prima facie* showing had been made by the appellant, which entitled him to the relief prayed for, and an order was issued, granting the motion and allowing the appellant leave to make his motion for a new trial in the lower Court on the ground stated, and in the meantime, until such motion could be heard, suspended his appeal then pending in this Court.

Thereafter the motion for a new trial was duly heard by his Honor, Judge A. L. Gaston, who, after a full hearing, refused it.

The case is now on appeal in this Court from the order denying the motion for a new trial issued by Judge Gaston, and from the order passed by his Honor, Judge Shipp—the trial Judge who heard the case below—denying the motion for a new trial upon other grounds.

The facts are not in dispute with reference to the status of Mrs. Caldwell, who was acting as the Deputy Clerk of Court in the trial below, and who administered the oath to the appellant at the time he was called as a witness in that case.

The office of Deputy Clerk of Court is an office recognized and established by law. The statute authorizing the appointment (Section 3581, 1932 Code), provides: "The clerk may appoint a deputy or deputies, to be approved by the court of Common Pleas, a record of whose appointment shall be made in the clerk's office. Before entering on the duties of his appointment such deputy must take the oath prescribed by the Constitution and the oath with respect to duelling; and when so qualified, the deputy may do and perform any and all of the duties appertaining to the office of his principal. Such appointment shall be evidenced by a certificate thereof, signed by the clerk, and shall continue during his pleasure. He may take such bond and security from his deputy as he shall deem necessary to secure the faithful discharge of the duties of the appointment, but shall in all cases be answerable for the neglect of duty or misconduct in office of his deputy."

It appears that Mrs. Caldwell was appointed Deputy Clerk of the Court by T. E. McMackin, Clerk of Court, on January 28, 1931, and received from him a written certificate showing such appointment. This appointment was duly approved by a Judge of the Court of Common Pleas, and she duly qualified by taking the oath prescribed by law, gave bond, and entered upon the discharge of her duties. The

term of office of Mr. McMackin expired on January 12, 1933. He was re-elected to the office of Clerk of Court for York County, and was again commissioned by the Governor, and qualified on January 17, 1933. On this latter date he entered upon the tenure of a new term of four years. Mrs. Caldwell was verbally reappointed as Deputy Clerk, gave bond, and continued to discharge the duties of that office. However, she received no certificate in writing of such appointment, signed by the Clerk; nor was her appointment approved by the Court of Common Pleas; nor did she take the oath required by the statute, nor was a record of her appointment made in the Clerk's office.

From the undisputed facts, it is obvious that the Clerk of the Court failed to comply with specific legal requirements in the reappointment of his Deputy Clerk. We think it follows as a necessary conclusion that at the time she administered the oath to the appellant, on July 10, 1933, during this holdover period, she was not an officer *de jure*. That she was a *de facto* Deputy Clerk of the Court is conceded by the appellant. His contention now is that as such *de facto* officer she did not have legal authority to administer an oath upon which the statutory offense of false swearing may be based.

The statute under which the defendant was tried and convicted (Section 1400, 1932 Code), provides: "Whoever shall, wilfully and knowingly, swear falsely in taking any oath required by law, *and administered by any person directed or permitted by law to administer such oath* [italics added], shall be deemed guilty of perjury, and, on conviction, incur the pains and penalties of that offense."

It will be observed from the wording of this statute that the oath must be administered by a person directed or permitted by law to administer such oath.

"It is an essential prerequisite to the establishment of the guilt of one accused of the crime of perjury or false swearing, as the case may be, that the oath shall have been administered by a person authorized by law to administer it, and where the oath was administered by a person having

no legal authority to do so, as by a person acting merely in a private capacity, or by one who had authority to administer certain oaths, but not the one in question, or by one who had authority seemingly colorable, but no authority in fact, there can be no conviction, for the oath is altogether idle." 48 C. J., § 78, p. 856.

"Perjury or false swearing cannot be assigned upon an oath administered by an officer who has failed to qualify * * *" 48 C. J., § 81, p. 857.

And see to the same effect 21 R. C. L., § 81, p. 857.

And see to the same effect 21 R. C. L., § 8, p. 260.

Cases from many jurisdictions in support of the quoted text are cited in the notes, including our own cases of *State v. McCroskey,* 3 McCord, 308, 14 S. C. L., 308, and *State v. Hayward,* 1 Nott & McC., 546, 10 S. C. L., 546.

That perjury or false swearing, as the case may be, may be predicated upon a false statement made under oath administered by a *de facto* officer has been both affirmed and denied.

Some of the authorities, adopting the affirmative view, hold that a *de facto* deputy clerk may legally administer the oath in a criminal proceeding such as perjury. *Keator v. People,* 32 Mich., 484; *Morford v. Territory,* 10 Okl., 741, 63 P., 958, 54 L. R. A., 513.

The opposite doctrine is distinctly expressed in the case of *Biggerstaff v. Commonwealth,* 11 Bush, Ky., 169:

"At the common law the authority of the officer administering the oath was always open to inquiry. The existence of that rule was recognized and continued in force by the Revised Statutes, section 2, article 8, chapter on Crimes and Punishments, which provided 'that if any person, in any matter which is or may be judicially pending, or on any subject in which he can legally be sworn, or in which he is required to be sworn, when sworn by a person authorized by law to administer an oath, shall willfully and knowingly swear, depose, or give in evidence that which is untrue and false, he shall be confined in the penitenitary,' etc.

"An essential prerequisite to the establishment of the guilt of the accused is that the oath shall have been administered 'by a person authorized by law to administer an oath.' If Willis did not take the prescribed oath of office, he was not authorized by law to act as a judge of the election, and could not therefore have been authorized to administer such oaths as the laws make it the duty of the judges and clerks of elections to administer.

"The rule founded upon public policy which requires the acts of *de facto* officers to be treated for many purposes as valid and binding *does not apply* [italics added] when an oath administered by such an officer is made the foundation of a prosecution for perjury."

The solicitor contends not only that the Deputy Clerk as a *de facto* officer could lawfully administer the oath, but that the power was inherent in the Court to direct or permit the administration of such an oath by the Deputy Clerk, and that such oath having been administered in open Court was a substantial compliance with the statute. This contention finds support in cases from Ohio and Tennessee. *State v. Townley,* 67 Ohio St., 21, 65 N. E., 149, 93 Am. St. Rep., 636; *Stephens v. State,* 1 Swan, Tenn., 157. These cases hold that the administering of the oath by the Deputy Clerk in the presence of the presiding Judge constituted the performance of a mere ministerial act for the Court; and that being administered in open Court with the assent and under the supervision of the Court, it could work no prejudice to the accused, whether the oath was administered by the Judge, or by an incompetent officer of the Court, or by any one not an officer who performed that duty for the Court. A similar ruling was made in *Oaks v. Rodgers,* 48 Cal., 197.

Under our statute, and under the decisions of this Court, we are unable to hold that the crime of false swearing may be predicated upon a false statement made under an oath administered by a *de facto* officer. Nor do we know of any law which clothes the presiding Judge

with the power to delegate authority to administer an oath. The Courts of Common Pleas in this State have power to administer all necessary oaths or affirmations (Section 34, 1932 Code), but they have no power to delegate such authority to anyone else. *State v. McCroskey, supra.*

In the case at bar, there was no direction from the Court to Mrs. Caldwell to administer the oath to the appellant. But it is argued by the solicitor that, the oath having been administered in the presence of the Court, such procedure satisfied the express statutory requirement that it be administered by "any person directed or permitted *by law* to administer such oath."

This provision of the statute, in our opinion, has no reference to any direction or permission given by the Court, but it has specific reference to substantive law. In *State v. McCroskey, supra,* the defendant was indicted for perjury, which was assigned on an oath taken before arbitrators appointed by the Court. It was held that the arbitrators under such appointment and authority had no right to administer an oath; that the Court could not invest them with judicial authority. The Court went on to say that to entitle any one to administer an oath he must be clothed with a species of judicial power, and that he to whom it is granted cannot delegate it to another.

In *State v. Hayward, supra,* it was held that perjury may not be predicated of a criminal complaint made upon oath before a magistrate who was not authorized to administer the oath, because he had taken the oath of qualification before a person not authorized to administer it. In that case Mr. Mitchell, the magistrate, had taken the oath of qualification before one of the associate Judges instead of before the Governor, as required by law. While discharging the duties of his office as a magistrate, he administered an oath to the defendant, Hayward, in the form of an affidavit, upon which the perjury was assigned. No question of jurisdiction was raised in the *Hayward case.* The defect was that

the magistrate had not been duly qualified. The Court referred to the fact that it had been customary for magistrates to qualify before Judges of the Court, and that the Judges had exercised this power as one of the supposed inherent functions of their office, but concluded that this practice was founded in error. Continuing, the Court said: "Be this as it may, it appears sufficiently evident that they have no such power, and therefore that the Magistrate, who took the affidavit, on which the perjury in this case is assigned, had not been duly qualified, and consequently was not authorized to administer the oath; of course it cannot support the legal charge of perjury, and on this ground there must be a new trial."

While the general rule undoubtedly is that the acts of a *de facto* officer are to be treated for many purposes as valid and binding for reasons of public policy, this rule does not apply in a prosecution for perjury. This exception is aptly illustrated in the following quotation from *Kottman v. Ayer,* 3 Strob., 92, 34 S. C. L., 92: "To the general rule in relation to the acts of an officer *de facto* there seems to be some exceptions, but none that affects the proposition above stated, as to the rights of third persons. To entitle one to claim the emoluments of an officer, or the privileges conferred by it, he must shew, if his right be questioned, that he is in office *de jure,* as in the case of *Allen v. McNeel,* 1 Mill, Const., 459, where one claimed prize money as an officer, it was held he ought to prove himself such: his having acted would not be sufficient, where his being an officer is the very gist of his action. *Another exception is,* that made in the case of the *State v. Hayward,* 1 Nott & McC., 546, 547. That was an indictment for perjury. The affidavit on which the perjury was assigned was taken before a Magistrate (Mitchell), who had taken the oaths of office, but not before one authorized to administer them. It was held that the allegation in the indictment, that the alleged false oath was taken before one legally competent to administer an oath, was one to be *strictly proved.*"

As further confirming this view, we find the following reference to the *Hayward case* in *Ex Parte Norris,* 8 S. C., 408, at page 481: "*State v. Hayward,* 1 Nott & McC., 546, follows *Rex. v. Werbst* (3 Camp., 432), holding that one not having *legal* title as a Justice [magistrate] could not administer an oath so that perjury would lie as for false swearing. To such cases the rule under examination is not considered as extending."

Under the principle announced in the foregoing cases, we are constrained to hold that Mrs. Caldwell did not have legal authority to administer an oath upon which the statutory offense of false swearing may be based.

In view of the disposition we have made of this question, it becomes unnecessary to consider the exceptions filed by the appellant to the refusal of his Honor, Judge Shipp, to grant a new trial upon other grounds.

Judgment reversed, and case remanded for a new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.