751 A.2d 1

CENTURY NATIONAL BANK

v.

Hossam MAKKAR, D.D.S. d/b/a Cherrywood
Dental Associates, et al.

No. 1509, Sept. Term, 1999.

Court of Special Appeals of Maryland.

May 2, 2000.

Richard D. Horn (Bracewell & Patterson, LLP, on the brief), Washington, DC, for appellant.

Michael J. Jack (Fedder and Garten P.A., on the brief), Baltimore, for appellee.

Argued before WENNER, HOLLANDER and THIEME, JJ.

THIEME, Judge.

Appellant Century National Bank ("Century") appeals from a judgment of the Circuit Court for Prince George's County dismissing its claims for conversion, misdirection of proceeds, and breach of a third-party beneficiary contract against appellee, HPSC, Inc. ("HPSC"). Century also appeals the court's grant of HPSC's motion for summary judgment as to Century's claim for the imposition of a constructive trust. Century presents the following questions for our review:

1. Do Century's allegations that HPSC wrongfully paid the proceeds from the sale of the collateral in which Century had a first priority perfected security interest to Century's debtor's agent rather than to Century state a claim for conversion?

2. Do Century's allegations that HPSC unlawfully misdirected the proceeds from the sale of the collateral state a claim for negligent breach of HPSC's duty of ordinary and reasonable care to Century?

3. Do Century's allegations state a claim against HPSC for breach of a third-party beneficiary contract?

4. Did the circuit court err in granting summary judgment on Century's claim for constructive trust without permitting Century to conduct meaningful discovery on that claim?

We answer "no" to these questions, and affirm.

### Facts

In 1996, Century loaned approximately $300,000.00 to Dr. Ray Vidal, a dentist. To secure the loan, Century took a security interest in the assets of Vidal's dental practice, including his inventory, accounts, and equipment (the "collateral"). Century perfected its security interest by filing a financing statement.

In 1997, Vidal contracted to sell the dental practice to Hassam Makkar, a dentist with an office in Prince George's County, Maryland.[1] Makkar obtained financing for a portion of the purchase price from HPSC, a finance company in Boston, Massachusetts, pursuant to a written loan agreement between Makkar and HPSC. HPSC wired the money being loaned for the Vidal/Makkar closing to Vidal's attorney, who in turn disbursed the money to Vidal without paying off the outstanding Century loan. Vidal defaulted on the Century loan. Century retained its security interest in the collateral throughout the action in the circuit court and during this appeal.

In May of 1998, Century filed a complaint in the Circuit Court for Prince George's County alleging that HPSC improperly paid to Vidal's agent the proceeds of the sale of collateral, in which Century had a perfected security interest. Century thus alleged that HPSC was liable for conversion, misdirection of proceeds, and imposition of a constructive trust.

---

1. Century notes in its brief to this Court that "Century has dismissed its appeal of the judgment in favor of defendant Hassam Makkar, D.D.S. d/b/a Cherrywood Dental Associates." Century filed a notice of dismissal as to its appeal of the judgment in favor of Makkar on February 1, 2000. Accordingly, we limit our review to the court's judgments in favor of HPSC.

On July 1, 1998, HPSC filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. HPSC also requested a hearing. On July 20, 1998, Century filed an opposition, and on September 4, 1998, Century filed its first amended complaint, adding a claim for breach of a third-party beneficiary contract. On September 18, 1998, HPSC filed a motion to dismiss and again requested a hearing. On November 24, 1998, without a hearing, the court entered an order granting HPSC's motion to dismiss as to counts one (conversion), two (misdirection of proceeds), and three (breach of third-party beneficiary contract). The court did not dismiss Century's claim for imposition of a constructive trust against HPSC.

On March 5, 1999, HPSC filed a motion for summary judgment as to the constructive trust claim. In support of its motion, HPSC filed an affidavit of Daniel Croft, its sales representative and manager responsible for the loan to Makkar. Century filed an opposition to HPSC's motion for summary judgment on April 9, 1999. Rather than file a counter-affidavit or other evidence in support of its opposition, Century filed an affidavit from a loan officer stating that Century was unable to present facts in opposition because it had not had an opportunity to conduct discovery. On July 23, 1999, after a hearing, the court granted HPSC's motion for summary judgment on Century's claim for imposition of a constructive trust.

Additional facts are set forth as necessary in the following opinion.

### Discussion

HPSC asserted in its motion to dismiss that the allegations of conversion, misdirection of proceeds, and breach of a third-party beneficiary contract failed to state a claim for which relief could be granted. We agree.

Maryland Rule 2–322(b) provides that the defense of "failure to state a claim upon which relief can be granted" may be asserted in a motion to dismiss filed before an answer. When

reviewing the grant of a motion to dismiss, "the reviewing appellate court shall assume to be true not only all of the well[-]pleaded facts in the complaint but also 'the inferences which may be reasonably drawn from those well[-]pleaded facts.'" *Simms v. Constantine,* 113 Md.App. 291, 295, 688 A.2d 1 (1997) (quoting *Stone v. Chicago Title Ins. Co.,* 330 Md. 329, 333–34, 624 A.2d 496 (1993)); *see also Wimmer v. Richards,* 75 Md.App. 102, 540 A.2d 827, *cert. denied,* 313 Md. 506, 545 A.2d 1344 (1988). Moreover, this Court must "consider well-pleaded facts and allegations in the light most favorable to the appellant." *Parker v. Kowalsky,* 124 Md.App. 447, 458, 722 A.2d 441 (1999). "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Id.,* 124 Md.App. 447, 722 A.2d 441 (citing *Simms,* 113 Md.App. at 296, 688 A.2d 1); *see also Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993). This Court has noted, however, that consideration may only be given "to allegations of fact and inferences deducible from them and not 'merely conclusory charges.'" *Parker v. Columbia Bank,* 91 Md.App. 346, 351 n. 1, 604 A.2d 521, *cert. denied,* 327 Md. 524, 610 A.2d 796 (1992) (quoting *Yousef v. Trustbank,* 81 Md.App. 527, 536, 568 A.2d 1134 (1990)).

### Conversion

In count one of its amended complaint, Century attempted to state a cause of action for conversion. Century alleged that it had a security interest in the collateral sold from Vidal to Makkar and that Century did not authorize the sale. Century further alleged that the collateral remained subject to Century's security interest and that HPSC's security interest in the collateral was a conversion of the collateral.

As the Court of Appeals stated in *Interstate Insurance Company v. Logan,* 205 Md. 583, 588–89, 109 A.2d 904 (1954), conversion is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." Moreover, "[c]onversion requires not merely temporary interference with property rights, but the exercise of unauthorized

dominion and control to the complete exclusion of the rightful possessor." *Yost v. Early,* 87 Md.App. 364, 388, 589 A.2d 1291, *cert. denied,* 324 Md. 123, 596 A.2d 628 (1991) (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d 195 (2d Cir.1983)).

Century did not allege in its complaint that HPSC ever had possession of or exercised dominion over the collateral. Specifically, Century did not contend that HPSC attempted to seize or otherwise take action against the collateral, that HPSC prevented Century from exercising whatever rights it may have had against the collateral, or, significantly, that HPSC ever claimed that its security interest in the collateral was superior to Century's. Instead, the only exercise of "dominion" Century attributes to HPSC was HPSC's recordation of a security interest in the collateral. Century provides no legal support for its argument that taking a security interest in collateral constitutes conversion of the collateral, particularly where the party taking the security interest does not assert that the interest is superior to other existing interests. This unsupported contention is insufficient to establish a claim for which relief can be granted, as taking a security interest in property under these circumstances does not constitute conversion of the property. *See* 18 Am.Jur.2d *Conversion* § 36 (1985) ("The mere taking and recording of a security interest upon personal property, even [if] from someone who is not the true owner[,] does not constitute conversion, when the party taking the security interest never exercises ownership or control other than the filing of the security interest.") (citing *Prewitt v. Branham,* 643 S.W.2d 122 (Tex. 1982)); 68A Am.Jur.2d *Secured Transactions* § 20 (1993) ("[T]aking a security interest ... do[es] not constitute the exercise of dominion or control over the collateral.") (citing *Prewitt,* 643 S.W.2d at 123 (Tex.1982)).

In its brief to this Court, Century contends that, besides the collateral, HPSC converted "the proceeds from the sale of that collateral." This argument was not raised in Century's amended complaint and, therefore, is not properly before this Court. *See* Md. Rule 8–131(a); *see also Guerassio v. Ameri-*

*can Bankers Corp.,* 236 Md. 500, 204 A.2d 568 (1964); *Faith v. Keefer,* 127 Md.App. 706, 737, 736 A.2d 422, *cert. denied,* 357 Md. 191, 742 A.2d 521 (1999); *Gittin v. Haught–Bingham,* 123 Md.App. 44, 48, 716 A.2d 1063 (1998). Indeed, in reviewing whether the lower court properly granted a motion to dismiss, we are necessarily relegated to considering only those facts and arguments set forth in the pleadings before the circuit court. Accepting as true the facts alleged in Century's amended complaint, we find that Century failed to allege facts upon which a court could find that HPSC had converted the collateral. The court therefore properly dismissed count one of the complaint.

### Misdirection of Proceeds/Negligence

In its brief to this Court, Century concedes that "Maryland courts have not expressly recognized the tort of negligent misdirection of proceeds." Upon reviewing Century's amended complaint, it appears that, while count two was styled "Misdirection of Proceeds," Century was essentially attempting to state a cause of action for negligence. Count two alleged that Century had a security interest in the collateral, which was sold without Century's authorization. In addition, Century alleged that HPSC knew or should have known of Century's security interest in the collateral and that HPSC "owed a legal duty of ordinary and reasonable care to Century to ensure that the payment of the proceeds from the sale of the collateral would be paid to Century." Thus, Century maintained that HPSC was negligent because Century was not paid off at the time the collateral was sold by Vidal to Makkar. Again, we disagree.

The Court of Appeals has held that to state a cause of action for negligence, "a sufficient pleading must 'allege, with certainty and definiteness, facts and circumstances sufficient to set forth (a) a *duty* owed by the defendant to the plaintiff, (b) a *breach* of that duty, and (c) injury *proximately* resulting from that breach.'" *Scott v. Jenkins,* 345 Md. 21, 28, 690 A.2d 1000 (1997) (citing *Read Drug and Chemical Co. v. Colwill Constr. Co.,* 250 Md. 406, 412, 243 A.2d 548 (1968)) (emphasis

in original). Count two of Century's complaint simply did not meet this burden.

Specifically, the complaint failed to allege any facts that would set forth a duty owed by HPSC to Century. In addition, Century fails to provide this Court with any legal support for its implied proposition that a subsequent lender owes a duty of care to a prior lender to direct the sale proceeds to the "rightful owner," the prior lender. As HPSC points out, Maryland case law suggests otherwise—that, absent an agreement between the prior and subsequent lenders, the subsequent lender owes no duty to another lender to monitor the use or disbursement of proceeds by the borrower, or to ensure that the prior lender's loan is paid. *See generally, Rockhill v. United States*, 288 Md. 237, 418 A.2d 197 (1980); *Hyatt v. Md. Fed. Sav. & Loan Ass'n*, 42 Md.App. 623, 629, 402 A.2d 118 (1979). Because the complaint fails to allege facts that would set forth a duty on the part of HPSC, count two of the complaint failed to state a claim upon which relief could be granted and, therefore, was properly dismissed.

### Breach of Third–Party Beneficiary Contract

█ Century next argues that the court erred in dismissing its claim for breach of a third-party beneficiary contract, count three of the complaint. Again, we find that the court properly dismissed this count for failing to state a claim upon which relief can be granted.

In count three, Century asserted that HPSC "expressly or impliedly agreed" with Makkar that it would pay off any prior liens on the collateral. Century further alleged that Makkar relied upon this agreement and that HPSC breached the agreement by failing to pay off the Century loan. Recognizing that it was not a party to the agreement, Century contended that it "was an express, intended beneficiary" of the alleged HPSC–Makkar agreement. The record does not support Century's assertions.[2]

---

**2.** The loan agreement between HPSC and Makkar was attached to and incorporated in the Century amended complaint.

The loan agreement between HPSC and Makkar did not include any provisions indicating that HPSC would discharge or satisfy prior liens on the collateral being purchased. Nor did the agreement include a provision suggesting that HPSC would monitor the use of loan proceeds. On the contrary, the obligation to obtain and maintain clear title to the collateral was placed on Makkar, the borrower. Specifically, Article IV of the HPSC–Makkar loan agreement, which addressed covenants, provided the following:

> 4.3 *Limitation on Liens.* The Borrower [ (Makkar) ] will not create, permit or suffer to exist, and will defend the Collateral against and take such other action as is necessary to remove, any lien, claim or right, in or to the Collateral, except the lien granted to Lender [ (HPSC) ] herein and any other lien permitted in writing by Lender. At the Lender's request, Borrower will defend the right, title and interest of the Lender in and to any of the Collateral against the claims and demands of all persons whomsoever.

Article V of the agreement, which addresses remedies, further provides: "Beyond the safe custody thereof, the Lender shall have no duty as to any Collateral in its possession or as to the preservation of rights against prior parties or any other rights pertaining thereto." Thus, contrary to Century's contention in its complaint, there was no agreement between HPSC and Makkar that HPSC would satisfy prior liens on the collateral. We note that Century did not allege any facts to the effect that HPSC and Makkar had agreed to modify the written loan agreement, so as to create the agreement asserted by Century.

 In addition, other than the bare conclusory assertion, Century failed to allege any facts that would establish that it was an intended third-party beneficiary of any purported agreement between Makkar and HPSC. While we recognize that a person for whose benefit a contract is made can maintain an action upon the contract, that person must first demonstrate "that the contract was intended for his benefit; and, in order for a third party beneficiary to recover for a

breach of contract[,] it must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise." *Marlboro Shirt Co. v. American Dist. Tel. Co.*, 196 Md. 565, 569, 77 A.2d 776 (1951).

There is no indication in the HPSC–Makkar lien agreement that Century was an intended beneficiary of the agreement. Even if we accept that Century might have derived some benefit from the agreement, Century was at most an incidental beneficiary.

> An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee. "In order to recover it is essential that the beneficiary shall be the real promisee; i.e. that the promise shall be made to him in fact, though not in form. It is not enough that the contract may operate to his benefit. It must clearly appear that the parties intend to recognize him as the primary party in interest and as privy to the promise."

*Marlboro Shirt Co.*, 196 Md. at 569, 77 A.2d 776; *see also Hamilton v. Board of Education*, 233 Md. 196, 199–200, 195 A.2d 710 (1963). Thus, even if Century was an incidental third-party beneficiary of the HPSC–Makkar agreement, it cannot recover for breach of contract, and the court properly dismissed count three of the complaint.

### Constructive Trust

 Century's final argument on appeal is that the court erred in granting summary judgment in favor of HPSC on Century's claim for a constructive trust because Century had established that material facts remained in dispute. In the alternative, Century contends that the grant of summary judgment was improper because the court did not permit Century to conduct meaningful discovery on the constructive trust claim. We will address these arguments in turn.

Pursuant to Md. Rule 2–501(e), summary judgment is appropriate only if there is no dispute of material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. *See, e.g., Murphy v. Merzbacher*, 346 Md. 525, 531, 697 A.2d 861 (1997); *Bowen v. Smith*, 342

Md. 449, 454, 677 A.2d 81 (1996); *Rosenblatt v. Exxon Company, U.S.A.,* 335 Md. 58, 68, 642 A.2d 180 (1994); *McGraw v. Loyola Ford, Inc.,* 124 Md.App. 560, 572, 723 A.2d 502, *cert. denied,* 353 Md. 473, 727 A.2d 382 (1999). A material fact is one that will alter the outcome of the case, depending upon the fact-finder's resolution of the dispute. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *McGraw,* 124 Md.App. at 573, 723 A.2d 502. "A dispute as to a fact 'relating to grounds upon which the decision is not rested is not a dispute with respect to a material fact and such dispute does not prevent the entry of summary judgment.'" *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 242–43, 603 A.2d 1357 (1992) (quoting *Salisbury Beauty Schs. v. State Bd. of Cosmetologists,* 268 Md. 32, 40, 300 A.2d 367 (1973)).

HPSC filed a motion for summary judgment as to the constructive trust claim on March 5, 1999. In support of the motion, HPSC filed the affidavit of Daniel Croft, its sales representative and manager responsible for the loan to Makkar (the "Croft affidavit"). The affidavit stated, *inter alia,* that: (1) the only agreements between HPSC and Makkar were those set forth in writing in the loan documents; (2) there was no agreement between HPSC and Century; (3) HPSC did not agree with or promise Makkar that it would pay off the Century lien or any other liens on the assets being purchased; (4) the only parties in interest to the HPSC–Makkar agreements were HPSC and Makkar; (5) the HPSC–Makkar loan agreements were not intended to benefit Century; (6) HPSC never had possession of or title to the collateral securing Century's loan to Vidal; (7) the only money received by HPSC in connection with the transaction were normal loan fees and payments made by Makkar to HPSC, in repayment of his loan from HPSC.

After obtaining an extension, Century filed an opposition to the motion for summary judgment on April 9, 1999. Century did not file a counter-affidavit or other evidence in support of its opposition.[3] Instead, Century filed an affidavit from a loan

---

3. Maryland Rule 2–501(b) provides: "The response to a motion for summary judgment shall identify with particularity the material facts

officer stating that Century was unable to present facts in opposition because it had not had an opportunity to conduct discovery. The Croft affidavit thus remained uncontested.

On appeal, Century's first argument regarding the summary judgment motion is that material facts were in dispute and, therefore, the motion should have been denied. Specifically, Century contends that a constructive trust should be imposed on HPSC "[a]s a matter of equity," as HPSC "would be enriched at the expense of Century" if it were permitted to retain possession of the payments made to HPSC by Makkar. Century then argues that the material fact in dispute is whether the failure to impose a constructive trust is inequitable. We do not find that this question constitutes a material fact in dispute. Century cites *Merchants Mortgage Co. v. Lubow*, 275 Md. 208, 218, 339 A.2d 664 (1975), for the proposition that, "where 'there are equitable assessments to be made,' summary judgment is inappropriate." While the Court in *Merchants* did make this statement, it was not made in a vacuum. In *Merchants*, there were clearly "evidentiary matters and material facts" in dispute, which included "whether the alleged diversions did occur, and if they did, whether they were permitted under the terms of Lubow's employment or, if not permitted, whether there was a knowing acquiescence by Merchants." *Id.* In this case, Century simply fails to allege any material facts in dispute.

As we previously discussed in this opinion, there was no "promise" by HPSC to Makkar to pay off the Century lien established by the terms of the loan agreement between HPSC and Makkar. This fact was also clearly stated in the Croft affidavit.

Moreover, the Croft affidavit stated that, as a factual matter, Century was not an "express, intended beneficiary" of the

---

that are disputed. When a motion for summary judgment is supported by an affidavit or other statement under oath, an opposing party who desires to controvert any fact contained in it may not rest solely upon allegations contained in the pleadings, but shall support the response by an affidavit or other written statement under oath."

claimed "promise." Again, as we have discussed, there are no provisions in the loan agreement between HPSC and Makkar suggesting that the agreement was intended to benefit Century. Century was not identified or referred to in any of the loan documents by and between HPSC and Makkar, nor in any instructions regarding settlement between HPSC and Makkar. Moreover, the Croft affidavit establishes that, even if HPSC had undertaken to pay off the prior liens on the collateral being purchased, that undertaking would not have been for the purpose of benefitting the holder of the prior security interest—it would have been for the sole purpose of protecting the interests of HPSC. Any benefit to Century would therefore have been merely incidental, and Century would still have had no right to enforce the agreement between HPSC and Makkar.

Finally, we note that the undisputed facts showed that Century did not suffer any injury or damage as a result of HPSC's breach of an alleged promise made to Makkar. After HPSC made the loan to Makkar, Century still retained its first priority security interest in the assets. By virtue of that security interest, Century had the right to take action against the collateral, which was in the hands of Makkar after the sale. Century also retained the right to take action on the proceeds of the sale, which were in the hands of Vidal, not HPSC.[4] Therefore, HPSC had nothing that belonged to Century or in which Century had any interest, and Century retained all of the rights in the collateral and proceeds that it had prior to the transaction.

---

**4.** The "proceeds" from the sale of the collateral were in the form of money paid by Makkar to purchase the assets, and those proceeds were in the hands of Vidal, Century's borrower. Indeed, the Maryland Code defines "proceeds" as "whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." Md.Code (1957, 1997 Rep. Vol.), § 9–306 of the Commercial Law Article. The money loaned by HPSC to Makkar did not become "proceeds" until it was paid over to Vidal and Vidal transferred the dental practice assets to Makkar. Therefore, money received by HPSC in this transaction was in the form of loan fees and payments made by Makkar in repayment of his loan with HPSC, not "proceeds" from the sale.

■ Upon reviewing the record, we disagree with Century's contention that material facts were in dispute as to count five of the amended complaint. Therefore, we turn to Century's argument that it was denied the opportunity to conduct meaningful discovery to establish the existence of facts in support of its claim.

Rather than grant the motion for summary judgment, Century maintains, the court should have "denied or continued HPSC's motion for summary judgment to permit Century to develop facts essential to justify its opposition," in accordance with Maryland Rule 2–501(d). That rule provides:

> If the court is satisfied from the affidavit of a party opposing a motion for summary judgment that the facts essential to justify the opposition cannot be set forth for reasons stated in the affidavit, the court may deny the motion or may order a continuance to permit affidavits to be obtained or discovery to be conducted or may enter any other order that justice requires.

When the motion for summary judgment was heard in this case, the motion, supported by the Croft affidavit, had been pending for more than four and one-half months; the case itself had been pending for more than fourteen months. Century did not seek discovery during this time. On July 9, 1999, prior to the July 23, 1999, hearing, the court permitted Century to propound interrogatories to HPSC and Makkar on an expedited basis. Answers to these interrogatories were provided prior to the hearing.

Rule 2–501(d) clearly gives the trial court discretion as to whether to order a continuance before ruling on a motion for summary judgment. Upon reviewing the record, we cannot hold that the court abused its discretion by deciding the motion at the July 23, 1999, hearing, rather than granting Century a continuance to allow it to conduct additional discovery. Because no material facts were in dispute as to count five of Century's amended complaint, and because we find that the court did not abuse its discretion in refusing to continue

the hearing on the motion, we hold that the court properly granted HPSC's motion for summary judgment.

### Conclusion

We hold that Century's claims for conversion, misdirection of proceeds, and breach of a third-party beneficiary contract failed to state claims for which relief could be granted and, therefore, were properly dismissed. We further hold that the court properly granted summary judgment in favor of HPSC as to the constructive trust count of the amended complaint. Accordingly, we affirm the trial court's judgments.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**